1
2
3
4
5
6
7
8

# IN THE UNITED STATES DISTRICT COURT

9

## FOR THE EASTERN DISTRICT OF CALIFORNIA

10
11

LAWRENCE M.TILLOTSON,                          CASE NO. CV F 04-6188 OWW LJO

12

    Plaintiff,                              **FINDINGS AND RECOMMENDATIONS ON**
                        **SOCIAL SECURITY COMPLAINT**

13

 vs.                                     (Docs. 15, 17.)

14

JO ANNE B. BARNHART,
Commissioner of Social

15

Security,

16

    Defendant.
                 /

17
18

## INTRODUCTION

19

   Plaintiff Lawrence Tillotson ("plaintiff") seeks this Court's review of an administrative law

20

judge's ("ALJ's") decision that plaintiff is neither disabled nor entitled to disability insurance benefits

21

under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-433.   Based on review of the

22

Administrative Record ("AR") and the papers of plaintiff and defendant Jo Anne B. Barnhart,

23

Commissioner of Social Security ("Commissioner"), this Court RECOMMENDS to DENY plaintiff's

24

request to reverse the Commissioner's decision to deny plaintiff disability insurance benefits or to

25

remand for further proceedings.

26

## BACKGROUND

27

### Personal Background

28

   Plaintiff is age 49, has a high school education and past relevant work as a truck driver.  (AR 63,

1

1  110.)

2  **Administrative Proceedings**

3      On August 12, 2002, plaintiff protectively filed his disability insurance benefits application to

4  claim disability since May 20, 2002 based on glaucoma in his left eye and amputation below his left

5  knee. (AR 66, 109.)  With its October 3, 2002 Notice of Disapproved Claims, the Social Security

6  Administration ("SSA") denied plaintiff's claims and determined that plaintiff's condition is not severe

7  enough to prevent him to work. (AR 33-36.)  On October 29, 2002, plaintiff filed his Request for

8  Reconsideration to claim that he is unable to work because of blindness in one eye and missing one leg.

9  (AR 37.)  With its January 2, 2003 Notice of Reconsideration, SSA denied plaintiff's claim and again

10  determined that his condition is not severe enough to prevent him to work. (AR 39-42.)

11      On March 13, 2003, plaintiff filed his Request for Hearing by Administrative Law Judge to claim

12  he is totally disabled. (AR 43-44.) After a August 13, 2003 hearing, the ALJ issued his January 6, 2004

13  decision to conclude that plaintiff is able to perform a narrow range of work at the light exertional level

14  and is not disabled. (AR 18-27.)

15      Plaintiff submitted to SSA's Appeals Council his January 22 and 26, 2004 Requests for Review

16  of Hearing Decision. (AR 12-14.) On July 21, 2004, the Appeals Council denied plaintiff's requests for

17  review to render the ALJ's January 6, 2004 decision as the Commissioner's final decision subject to this

18  Court's review. (AR 6-8.)

19  **Medical History And Records Review**

20      Plaintiff treated for various issues, including glaucoma, poor vision and swelling in the stump

21  of his amputated leg.

22  ***Brian Lenser, M.D., Treating Physician***

23      On May 24, 2002, opthamologist Brian Lenser, M.D. ("Dr. Lenser"), diagnosed plaintiff with

24  end stage glaucoma in the left eye.  The significant visual loss caused by the glaucoma resulted in "count

25  fingers" vision in the left eye and 20/20 vision in the right eye. (AR 193.) Dr. Lenser prescribed plaintiff

26  Xalatan eye drops to be used nightly in both eyes and stated that plaintiff's loss of vision at least

27  temporarily prevented plaintiff from fulfilling his duties as a commercial truck driver. (AR193.)

28      On August 30, 2002, Dr. Lenser examined plaintiff, and determined that plaintiff had advanced

visual loss in his left eye due to glaucoma resulting in "count fingers at two feet" visual acuity in the left

eye and 20/25 vision in the right eye. (AR 172-176.)  Dr. Lenser also determined plaintiff has "large

peripheral and visual defects in both eyes with the left eye being more involved than the right eye." (AR

172.)  Dr. Lenser opined that plaintiff is legally blind in his left eye, with no prognosis for improvement,

and determined that plaintiff's functional ability was limited by visual loss in his left eye to preclude

"working in industries, which may involve heavy machinery or driving with specialized licenses." (AR

172.)  On November 27, 2002, Dr. Lenser reaffirmed his August 30, 2002 diagnosis that plaintiff suffers

from chronic open angle glaucoma and further defined plaintiff's visual field loss as a "moderate

constriction of the visual field in the right side with more significant impairment inferiorly and

significant loss of . . . visual field in the left side with reduction to fixation in all quadrants." (AR 170,

185.)

On May 1, 2003, Dr. Lenser completed a medical questionnaire created by plaintiff's attorney

to indicate that plaintiff has no depth perception and restriction of vision in the dark and at night. (AR

197.)  Dr. Lenser further noted that plaintiff should not work around heights, dangerous equipment, and

moving machinery, and should not drive trucks or commercial vehicles. (AR 197-198.)  On May 2,

2003, Dr. Lenser noted as of his last exam on August 30, 2002, plaintiff had 20/25 vision in his right eye,

advanced glaucoma in his left eye, and poor vision as a result of the glaucoma. (AR 179, 189.)  On

October 8, 2003, Dr. Lenser responded to a follow up inquiry regarding his May 1, 2003 assessment of

plaintiff and opined that plaintiff's visual loss did not "combine in severity to equal" a visual impairment

as stated by plaintiff's attorney in his form inquiry. (AR 199-200.)  Dr. Lenser stated that plaintiff's

combined visual problems do not limit his handling of fine objects, that plaintiff is able to handle coins

consistently in an eight-hour work day, and that plaintiff has no depth perception. (AR 200.)

### Michael D. Han, M.D., Treating Physician

On September 23, 2002, orthopaedic surgeon Michael D. Han, M.D. ("Dr. Han"), examined

plaintiff, and noted plaintiff's complaints of increased swelling at the stump of plaintiff's amputated leg

when walking for long periods of time, and that plaintiff attributed the swelling to his prosthesis needing

a refit. (AR 166.)  Dr. Han's notes reflect that there are no signs of active infection and that his left leg

below the knee amputation is well healed. (AR 167.)  According to Dr. Han, the prosthesis appears to

fit well, and plaintiff is able to walk normally. (AR 167.) Dr. Han's notes reflect that plaintiff appeared to be "functionally doing quite well" with no restrictions in seeing, hearing, speaking, traveling, sitting, pushing, pulling, bending, stooping, lifting, carrying, and using both hands for repetitive tasks. (AR 167.) Dr. Han determined that plaintiff should not stand, walk and ambulate more than six hours per day with appropriate breaks, and restricted his kneeling, crouching and crawling. (AR 167.) Dr. Han opined that plaintiff may use a cane for long distances on outdoor surfaces. (AR 167.)

### Non-Examining State Agency Physician

On October 2, 2002, C. Eskander, M.D. ("Dr. Eskander"), a California Disability Determination Services ("DDS") physician, reviewed all available medical evidence (AR 158-165), and determined that plaintiff retained the capacity to perform activities consistent with "light" work, as defined in 20 C.F.R. § 404.1567(b) (2005). (AR 159.) Dr. Eskander completed a Physical Residual Functional Capacity Assessment to indicate that plaintiff is restricted from: standing and/or walking for more than four hours or sitting for more than six hours in an eight-hour workday; pushing and/or pulling in the lower extremities because of no foot control; no more than occasional climbing, balancing, stooping, kneeling, crouching and crawling; and concentrated exposure to hazards such as machinery and heights. (AR 159-162.) He further opined that plaintiff does not need a cane. (AR 164.)

### Medications

Plaintiff's medications have included Travatan, Sulfameth/Trimeth and Xalatan. (AR 146, 166, 193.)

### Plaintiff's Activities And Testimony

### Questionnaires And Statements

Plaintiff completed an August 12, 2002 Disability Report Adult to note he is 6-foot-3 and weighs 200 pounds with an amputation below the left knee and blindness in the left eye, caused by glaucoma, limiting his ability to work. (AR 108-109.) During 1989-2002, plaintiff worked as a Class A truck driver, hauling sand and gravel. (AR 110.) Plaintiff's secondary duties as a truck driver included: using machines, tools or equipment; using technical knowledge or skills; writing, completing reports; and supervising other people. (AR 110.) As a truck driver, plaintiff sat for about 12 hours a day but also walked, stood, climbed, kneeled, crouched, wrote and handled small objects. (AR 110.) Plaintiff lifted

1   no more than ten pounds. (AR 110.)  On May 20, 2002, his injuries and illnesses first bothered him and

2   prevented him from passing the physical examination for a Class A driver's license to render him unable

3   to work. (AR 109.)

4        Plaintiff completed a September 6, 2002 Work History Report to note that during1989-2002,

5   plaintiff was a truck driver. (AR 131.)  His work comprised of driving and maintaining the truck and

6   trailer and filing daily logs. (AR 132.)  He worked ten hours at a time with little to no lifting or carrying,

7   however, in one of the six jobs listed, he was required to lift up to 50 pounds frequently. (AR 96.)

8        Plaintiff completed a November 20, 2002 Exertional Daily Activities Questionnaire to note that

9   he lives at home alone. (AR142.)  He feels dizzy, weak and off balance and needs assistance with

10  shopping, cooking, laundry and yard work. (AR 142.)  His right foot aches to prevent him from walking

11  far.  (AR 142, 144.)  Uneven surfaces make walking difficult, and at times, plaintiff uses crutches if he

12  is unable to wear his prosthesis. (AR 142, 144.)  Plaintiff's lack of depth perception renders daily chores

13  difficult and causes him to stumble. (AR 142.)  However, plaintiff drives twice weekly for grocery

14  shopping and conducts all household chores including dusting, vacuuming, mopping and laundry. (AR

15  143.)

16       Plaintiff completed an undated Reconsideration Disability Report to note his inability to walk,

17  stand, climb, bend and kneel.  (AR 120.)  Plaintiff's glaucoma prevents plaintiff to operate machinery,

18  and plaintiff no longer has a Class A driver's license. (AR 120.)  Plaintiff needs help to care for his

19  personal needs when he is unable to wear his prosthetic leg, and his poor vision renders shopping and

20  reading without a magnifying glass difficult. (AR 122.)

21                            ***Plaintiff's ALJ Hearing Testimony***

22       Plaintiff testified at the August 13, 2003 ALJ hearing that he lives alone in a house. (AR 219.)

23  His stump gets sore, but on some days his prosthesis fits well. (AR 222, 221.)  He wears his prosthesis

24  everyday, but when he takes it off, sometimes his stump is sore and swollen which is alleviated by

25  elevating it and a pressure band. (AR 222.)  His stump has bothered him since the 1986 amputation

26  below the left knee. (AR 229.)  Plaintiff is able to stand for approximately 30 minutes at a time and to

27  walk for 40- 45 minutes, but sitting is bothersome since his circulation can be cutoff to cause his leg,

28  lower back and arms to go numb. (AR 223.)  Plaintiff has seen doctors for skin problems and has county

medical insurance but has not seen a doctor for either his stump problems or his lower back soreness since his alleged onset date of May 20, 2002 because he could not "afford to go." (AR 230, 222.)

Plaintiff's lower back gets sore from sitting but he has not seen a doctor for it. (AR 224.) He is unable to carry more than a bag of groceries, 25 pounds, or a gallon of milk. (AR 224.) With the vision problems that began in May 2002, plaintiff's up close vision is worse than his distance vision to require him to him use a magnifying glass to read the newspaper. (AR 225-226.) Plaintiff has trouble handling objects when he looks directly at them and fumbles things constantly like his keys, wallet and drinks and believes his vision is getting worse and will further deteriorate if he is exposed to dust. (AR 228-229.)

### *Vocational Expert's Testimony*

Vocational expert  David Dettmer ("Mr. Dettmer") testified at the August 13, 2003 ALJ hearing that plaintiff's past relevant occupation of a truck driver is characterized by the Dictionary of Occupational Titles ("DOT") as "medium, SVP4" work. (AR 231.)

As a first hypothetical, the ALJ asked Mr. Dettmer to assume a person who has: (1) limitations on standing, walking and ambulating to six hours a day with appropriate breaks; (2) restrictions on kneeling, crouching and crawling to only occasionally; (3) no depth perception; (4) some restrictions to vision in the dark or at night; (5) restrictions on working around heights, dangerous equipment, or moving machinery; (6) no restrictions for work or fine manipulations of larger objects at a close distance; and (7) no restrictions for work requiring more distance vision 10 feet away. (AR 231-233.) Mr. Dettmer testified a person with such restrictions could not perform plaintiff's past relevant work. (AR 234.) Mr. Dettmer identified jobs in the unskilled medium category that could be performed with those specific limitations and including hospital cleaner (35,000 jobs in California and 11,000 jobs in the region), day worker (25,000 jobs in California and 8,000 jobs in the region), and dining room attendant (40,000 jobs in California). (AR 235-236.)

As a second hypothetical, the ALJ asked Mr. Dettmer to assume a person who has the limitations of the first hypothetical plus: (1) restrictions in handling fine objects; and (2) restrictions in working in areas where there are brighter lights. (AR 236.) Mr. Dettmer testified with the additional limitations, the hospital cleaner and day worker could be performed without additional erosion. (AR 236.)

As a third hypothetical, the ALJ asked Mr. Dettmer to assume a person who has: (1) restrictions

on lifting 20 pounds occasionally and 10 pounds frequently; (2) restrictions on standing and/or walking with normal breaks for a total of four hours; (3) restrictions on sitting to about six hours; (4) complete restriction from operating foot controls; (5) no depth perception; (6) restrictions on vision in the dark or at night; (7) restrictions on working around heights, dangerous equipment, or moving machinery; (8) no restrictions for work or fine manipulations of larger objects at a close distance; and (9) no restrictions for work requiring more distant vision 10 feet away. (AR 237.)  Mr. Dettmer identified jobs in the unskilled light category that could be performed with those limitations and including office helper (16,000 jobs in California and 5,000 jobs in the region) parking lot attendant (10,000 jobs in California and 3,000 jobs in the region after a 25 percent erosion for the restrictions on working around moving machinery), and cashier (80,000 jobs in California and 25, 000 jobs in the region after a 50 percent erosion for the sit/stand restrictions). (AR 237-239.)

As a fourth hypothetical, the ALJ asked Mr. Dettmer to assume a person who has the third hypothetical's limitations plus: (1) restrictions in handling fine objects; and (2) restrictions in working in areas where there are bright lights.  (AR 240.)  Mr. Dettmer testified with the additional limitations, the jobs of office helper, parking lot attendant and cashier could be performed without further erosion. (AR 240.)

As a fifth hypothetical, the ALJ asked Mr. Dettmer to assume a person who has the fourth hypothetical's limitations and a total restriction from handling fine objects. (AR 240.)  Mr. Dettmer testified that the additional restrictions on handling precluded performance of any jobs. (AR 240.)

As his first hypothetical, plaintiff's attorney asked Mr. Dettmer to assume a person who is unable to "make change." (AR 241.)  Mr. Dettmer opined that the limitation precluded working as a cashier and parking lot attendant but not office helper. (AR 241.)  Plaintiff's attorney asked if an office helper had "considerable visual requirements." (AR 242.)  Mr. Dettmer responded that someone with "insufficient visual acuity" to read typed material would not be able to perform the job. (AR 242.)  Mr. Dettmer opined there would be no jobs available with such limitations. (AR 242.)

As his second hypothetical, plaintiff's attorney asked Mr. Dettmer to assume a person with no depth perception. (AR 242.)  Mr. Dettmer opined that the limitation would not preclude working as a parking lot attendant and cashier. (AR 243.)

As his third hypothetical, plaintiff's attorney asked Mr. Dettmer to assume a person with limited peripheral vision. (AR 243.)  Mr. Dettmer opined that the limitation would not preclude working as a cashier or office helper, but there "might" be a problem as a parking lot attendant for safety reasons of being around vehicles. (AR 243-244.)

### The ALJ's Findings

In his January 6, 2004 decision, the ALJ identified the specific issue as whether plaintiff is under a disability, defined as the inability to engage in substantial gainful activity by reason of a medically determinable physical or mental impairment that can be expect to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  (AR 18.)  In concluding plaintiff is not disabled and thus ineligible for disability insurance benefits (AR 26-27), the ALJ found:

1. The plaintiff has an impairment or a combination of impairments considered "severe" pursuant to 20 C.F.R. § 404.1520(b) but which do not meet or medically equal an impairment in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments").

2. Plaintiff's testimony is not fully credible.

3. Plaintiff has the residual functional capacity to perform a narrow range of work at the light exertion level.  Plaintiff is able to lift 20 pounds occasionally and 10 pounds frequently, stand and/or walk four hours in an eight-hour workday, and sit six hours in an eight-hour workday.  Plaintiff is unable to push or pull with his lower extremity. Plaintiff occasionally is able to climb, balance, stoop, kneel, crouch or crawl.  Plaintiff has no manipulative or communicative limitations.  Plaintiff must avoid concentrated exposure to hazards, such as moving machinery, dangerous equipment or heights. Plaintiff has visual restrictions in the dark or at night and has impaired peripheral vision. Plaintiff should not drive trucks or other commercial vehicles.  Plaintiff is able to handle fine objects consistently and to use his hands and eyes in coordination for two-hour increments during an eight-hour workday.

4. Plaintiff is unable to perform any of his past relevant work. 20 C.F.R. § 404.1565.

5. Plaintiff has the residual functional capacity to perform a significant range of light work.

1          20 C.F.R. § 416.967

2      6.      Although plaintiff's exertional limitations do not allow him to perform the full range of

3              light work, there are a significant number of jobs in the national economy that he is able

4              to perform, using as a framework section 202.21 of the Medical-Vocational Guidelines,

5              20 C.F.R., Part 404, Subpart P, Appendix 2 ("Medical-Vocational Guidelines").

6              Examples of such jobs (after a 50 percent erosion for vision problems) include office

7              helper (16,000 jobs in California and 5,000 jobs in the region), cashier (80,000 jobs in

8              California and 25,000 jobs), parking lot attendant (14,000 jobs in California and 4,500

9              jobs in the region) to constitute a significant number of jobs at the light exertional level

10             with a specific vocational preparation rating of 2.

11                                               **DISCUSSION**

12                                          **Standard Of Review**

13         Congress has provided limited judicial review of a Commissioner's decision made through an

14   ALJ.  *See* 42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ,

15   when the determination is not based on legal error and is supported by substantial evidence.  *See Jones*

16   *v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Sanchez v. Secretary of Health & Human Services*, 812

17   F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work

18   contrary to treating physician's findings).[1]  Substantial evidence is "more than a mere scintilla,"

19   *Richardson v. Perales*, 402 U.S. 389, 402, 91 S.Ct. 1420 (1971), but less than a preponderance,

20   *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  Substantial evidence "means such

21   evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S.

22   at 401, 91 S.Ct. 1420; *Sandgathe*, 108 F.3d at 980.

23         The record as a whole must be considered, weighing both the evidence that supports and detracts

24   from the Commissioner's conclusion.  *Sandgathe*, 108 F.3d at 980; *Jones,* 760 F.2d at 995.  If there is

25   substantial evidence to support the administrative finding, or if there is conflicting evidence that will

26   _____

27         [1]       "The district court properly affirms the Commissioner's decision denying benefits if it is supported by
28   substantial evidence and based on the application of correct legal standards."  *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th
     Cir. 1997).

1   support a finding of either disability or nondisability, the finding of the Commissioner is conclusive.

2   *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). If the evidence is susceptible to more than

3   one rational interpretation, the court may not substitute its judgment for that of the Commissioner.

4   *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999); *Morgan v. Commissioner*, 169 F.3d 595, 599 (9th

5   Cir. 1999).

6          This Court reviews the ALJ's decision pursuant to 42 U.S.C. § 405(g) to determine whether it

7   is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

8   whole. *Copeland v. Bowen*, 861 F.2d 536, 538 (9th Cir. 1988). "A decision of the ALJ will not be

9   reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

10         Plaintiff bears the burden to prove that she is disabled which requires presentation of "complete

11   and detailed objective medical reports of his condition from licensed medical professionals." *Meanel*

12   *v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

13   Plaintiff must furnish medical and other evidence about plaintiff's medical impairments. 20 C.F.R. §§

14   404.1512(a), 416.912(a); ("[Y]ou must bring to our attention everything that shows that you are blind

15   or disabled."); 20 C.F.R. §§ 404.1514, 416.914 ("We need specific medical evidence to determine

16   whether you are disabled or blind. You are responsible for providing that evidence.")

17         Here, plaintiff claims disability since May 20, 2002 due to amputation below the left knee,

18   glaucoma and blindness in the left eye. (AR 109.)

19         With the above standards in mind, this Court turns to plaintiff's criticism of the ALJ's January

20   6, 2004 decision.

21   **New Evidence**

22         Plaintiff contends the ALJ did not properly consider all medical evidence and submitted with his

23   opening brief additional 2004 and 2005 records from Julius Mueller, M.D. ("Dr. Mueller"), Delbert

24   Morris, M.D. ("Dr. Morris"), and Stanislaus Eye Surgery which reflect plaintiff's continuing vision

25   difficulties, facial and supra pubic abscesses, back rashes, skin irritation at his stump, and depression.

26   The Commissioner notes that the new records arose after the ALJ's January 6, 2004 decision and contain

27   no information substantially different from that considered by the ALJ.

28         A remand is appropriate under 42 U.S.C. § 405(g) "where the new evidence is material and there

is good cause for the failure to incorporate such evidence in the record in a prior proceeding." *Booz v. Secretary of Health and Human Services*, 734 F.2d 1378, 1380 (9th Cir. 1984); *Burton v. Heckler*, 724 F.2d 1415, 1417 (9th Cir. 1984). In 1980, Congress amended 42 U.S.C. § 405(g) to add a materiality requirement "at least in part to limit the court's ability to remand cases for consideration of new evidence." *Ward v. Schweiker*, 686 F.2d 762, 764 (9th Cir. 1982) (citing *Carter v. Schweiker*, 649 F.2d 937, 942 (2nd Cir. 1981)).

"To meet the materiality requirement, the new evidence offered must bear directly and substantially on the matter in dispute." *Burton*, 724 F.2d at 1417. "[E]vidence is sufficiently material to require a remand, 'only where there is a *reasonable possibility* that the new evidence would have changed the outcome of the [Commissioner's] determination had it been before him.'" *Booz*, 734 F.2d at 1380 (quoting and adopting *Dorsey v. Heckler*, 702 F.2d 597, 604-605 (5th Cir. 1983);italics in original). "The good cause requirement often is liberally applied where . . . there is no indication that a remand for consideration of new evidence will result in prejudice to the [Commissioner]." *Burton*, 724 F.2d at 1417-1418.

Plaintiff fails to explain how the more recent records are material and their potential effect on the ALJ's decision. This Court is not in a position to speculate as to the materiality of the new evidence. If the evidence indicates deterioration after the hearing, it would be material to a new application and not probative of plaintiff's condition at the time of the August 13, 2003 hearing. *See Sanchez*, 812 F.2d at 512. Plaintiff fails to demonstrate ALJ error to consider all medical evidence.

### **Listing Of Impairments**

Plaintiff argues that the evidence supports disability under Listings 1.05B (amputation), 2.02 (impairment of visual acuity), and 2.03 (contraction of peripheral visual fields in the better eye) of the Listing of Impairments. The Commissioner responds that "substantial evidence supports the ALJ's determination that plaintiff's impairments did not meet or equal any of the Medical Listings of Impairments."

The SSA regulations provide: "If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled." 20 C.F.R. §§ 404.1520(c),

416.920(c).  "Basic work activities" are the "abilities and aptitudes necessary to do most jobs," including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling" as well as "[u]nderstanding, carrying out, and remembering simple instructions."  20 C.F.R. §§ 404.1521(b)(1), (3), 416.921(b)(1), (3).  At step two of the five-step disability analysis, "the ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, and without regard to whether each alone was sufficiently severe."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  Such inquiry "is a de minimis screening device to dispose of groundless claims."  *Smolen*, 80 F.3d at 1290 (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-154, 107 S.Ct. 2287, 2297-2298 (1987)).

The purpose of the Listing of Impairments is to describe impairments "severe enough to prevent a person from doing any gainful activity."  *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S.Ct. 885 (quoting Social Security Ruling ("SSR") 83-19, Dept. of Health and Human Services Rulings 90 (Jan. 1983)).  If a claimant meets or equals a listed impairment, he/she is disabled.  *Tackett*, 180 F.3d at 1099.

The United States Supreme Court has explained application of the Listing of Impairments:

> The listings . . . are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect.  Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results.  For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify. . . . "The level of severity in any particular listing section is depicted by the *given set* of findings and not by the degree of severity of any single medical finding – no matter to what extent that finding may exceed the listed value."
>
> . . .
>
> The [Commissioner] explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard.  The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just "substantial gainful activity."

*Sullivan*, 493 U.S. at 530-531, (italics in original; citations omitted).

"While the Listing of Impairments does describe conditions that are generally considered severe enough to prevent a person from doing any gainful activity, an ALJ should not consider a claimant's 'impairment to be one listed in Appendix 1 solely because it has the diagnosis of a listed impairment.  It must also have the **findings** shown in the Listing of that impairment.'"  *Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990) (quoting 20 C.F.R. § 404.1525(d)); *Key v. Heckler*, 754 F.2d 1545, 1549-1550

(9th Cir. 1985)) (bold added).

Plaintiff bears the burden to prove that she has an impairment that meets or equals one of the listed impairments. *Tackett*, 180 F.3d at 1098. To "meet" a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his/her claim. *Tackett*, 180 F.3d at 1099. To "equal" a listed impairment, a claimant must establish symptoms, signs and laboratory findings at least equal in severity and duration to the characteristics of a relevant listed impairment. *Tackett*, 180 F.3d at 1099. Medical equivalence must be based on medical findings in the evidence supported by medically acceptable clinical and laboratory diagnostic techniques. *Tackett*, 180 F.3d at 1100; 20 C.F.R. §§ 404.1526(b) and 416.926(b).

As a matter of law, the ALJ need not "state why a claimant failed to satisfy every different section of the listing of impairments," in particular when the ALJ's evaluation of the evidence is an adequate statement of the "foundations on which the ultimate factual conclusions are based." *Gonzales v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990). "An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch*, 400 F.3d at 683; *see Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001).

As concerns plaintiff, meeting or equaling Listing 1.05B requires one of the lower extremities to be amputated at or above the tarsal region with stump complications resulting in medical inability to use a prosthetic device to ambulate effectively, as defined in Listing 1.00B2b, which has or can be expected to last at least 12 months. Meeting or equaling Listing 2.02 requires vision in the better eye to be 20/200 or less after best correction. Meeting or equaling Listing 2.03 requires a contraction in the peripheral visual fields in the better eye either to 10 degrees or less from the point of fixation, or the widest diameter subtends an angle no greater than 20 degrees, or to 20 percent or less visual field efficiency.

In the case at hand, the ALJ correctly concluded that the "medical evidence indicates that the claimant has a left leg below the knee amputation and glaucoma, impairments that are severe within the meaning of the Regulations but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." (AR 20.) The ALJ thoroughly evaluated the

medical evidence. (AR 20-24.)  Plaintiff has not met his burden to show medical evidence that his impairments meet or equal Listing 1.05B and in fact, all medical evidence points to the contrary.  The ALJ properly noted that when plaintiff was examined by a consulting physician on September 23, 2002, plaintiff said his left leg was "doing relatively well" with the exception of some increased swelling when he walks for long periods of time and that "this might be caused by his prosthesis and he planned to have it refitted in the near future." (AR 21, 23, 166.)  The ALJ further relied on Dr. Han's observation that "[plaintiff] had a well healed left below the knee amputation without any signs of active infection or skin breakdown." (AR 23, 167.)  The ALJ also considered Dr. Han's determination that "he has 5/5 motor strength in all testable lower extremity muscle groups and no sensory deficits" and that plaintiff "was able to walk normally with his prosthesis." (AR 23, 167.)   The ALJ further noted that in Dr. Han's opinion, the plaintiff's "left below the knee amputation [was] functionally doing quite well." (AR 23, 167.)  Here, substantial evidence supports the ALJ's determination that plaintiff failed to establish he met or equaled Listing 1.05B.

Plaintiff incorrectly attempts to establish that his condition meets or equals Listing 2.02 by pointing to findings required for Listing 2.03.  Plaintiff wrongly relates contractions in his fields of vision in his right eye to support a finding of equivalence to an impairment in visual acuity in his right eye. Listing 2.03, not Listing 2.02, addresses visual field impairments.  At no point in the record is there any evidence of the vision in plaintiff's right eye, his better eye, to be 20/200 or less.  Therefore, plaintiff comes no where close to meeting his burden that his condition meets or equals Listing 2.02.

Plaintiff asserts Listing 2.03 has been met or equaled because Dr. Lenser determined plaintiff's inferior visual field contracted in the better eye to 10 degrees or less from the point of fixation.  Here, the ALJ properly determined Listing 2.03 had not been met because Dr. Lenser's October 8, 2003 report clarified that the visual field loss and visual acuity did not combine in severity to equal a listed impairment at this time. (AR 24, 200.)  In addition, the plaintiff's visual fields had not contracted to 10 degrees or less because his superior field of vision had not contracted to that extent.  Here, substantial evidence supports the  ALJ's determination that plaintiff's alleged impairments do not meet or equal Listing 2.03.

/ / /

**Vocational Expert's Testimony**

Plaintiff haphazardly contends that vocational expert Mr. Dettmer's testimony was inconsistent, inaudible, and changed upon cross-examination and that the ALJ erred by not inquiring "whether [there] was any departure from the [DOT] from the testimony."

In the final step of the five-step disability evaluation, the Commissioner has the burden to show, in light of a claimant's residual functional capacity, he/she can engage in other substantial gainful work that exists in the national economy.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001).  The Commissioner "can meet this burden by propounding to a vocational expert a hypothetical that reflects all the claimant's limitations."  *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995).  Alternatively, the Commissioner can refer to the Medical-Vocational Guidelines.  *Osenbrock*, 240 F.3d at 1162.

When vocational expert testimony is used, the vocational expert must identify a specific job or jobs in the national economy with requirements that the claimant's physical and mental abilities and vocational qualifications satisfy.  *Osenbrock*, 240 F.3d at 1162-1163.[2]

One purpose of the DOT is to classify identified job titles by their exertional and skill requirements. *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990).  The DOT is "the Secretary's primary source of reliable job information." *Terry*, 903 F.2d at 1276; 20 C.F.R. § 404.1566(d)(1).  "The DOT is not the sole source of admissible information concerning jobs. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).  The Secretary may take administrative notice of any reliable job information, including the services of a vocational expert. *Johnson*, 60 F.3d at 1435.  "The regulations, themselves, provide that the DOT classifications are rebuttable.  They recognize vocational experts and several published sources other than the DOT as authoritative." *Johnson*, 60 F.3d at 1435-1436.  "[A]n

---

[2]    The Ninth Circuit Court of Appeals has further noted:

When a claimant's non-exertional limitations are "sufficiently severe" so as to significantly limit the range of work permitted by the claimant's exertional limitations, the grids are inapplicable. *Desrosiers v. Secretary of Health & Human Services*, 846 F.2d 573, 577 (9th Cir. 1988).  In such instances, the Secretary must take testimony of a vocational expert, *Jones*, 760 F.2d at 998, and identify specific jobs within the claimant's capabilities.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).  Thus, the grids will be inappropriate where the predicate for using the grids – the ability to perform a full range of either medium, light or sedentary activities – is not present.

*Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988).

1   ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains

2   persuasive evidence to support the deviation." *Johnson*, 60 F.3d at 1435.

3        An ALJ may properly "limit a hypothetical to those impairments that are supported by substantial

4   evidence in the record." *Osenbrock*, 240 F.3d at 1165.  An ALJ may so limit a hypothetical even when

5   medical evidence conflicts.  *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989).  "An ALJ is free

6   to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence."

7   *Osenbrock*, 240 F.3d at 1165; *see Magallanes*, 881 F.2d at 756-757.  The parameters of an ALJ's

8   hypotheticals need not "include any alleged impairments that the ALJ has rejected as untrue."  *Long v.*

9   *Chater*, 108 F.3d 185, 188 (8th Cir. 1997).  An ALJ is not bound to accept restrictions in a hypothetical

10  question of claimant's counsel.  *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1986).

11       The record shows that Mr. Dettmer's testimony was neither inconsistent nor inaudible and

12  plaintiff fails to point to any meaningful error. (AR 231-244.)  Plaintiff points to no contradictions in

13  Mr. Dettmer's testimony.  The hypothetical questions to Mr. Dettmer changed, and Mr. Dettmer

14  accommodated the changes to them.  Upon cross examination, plaintiff's counsel added limitations of

15  inability to "make change" and "limited peripheral vision" to elicit Mr. Dettmer's corresponding

16  responses.  Accordingly, Mr. Dettmer noted that the "make change" limitation eliminated the cashier

17  and parking lot attendant positions whereas the "limited peripheral vision" limitation eliminated only

18  the parking lot attendant position. (AR 241-243.)  Plaintiff's attorney asked if the office helper position

19  had considerable visual requirements, to which Mr. Dettmer responded that inability to read due to

20  insufficient visual acuity precludes performance of the job. (AR 242.)   Here, the ALJ properly limited

21  hypotheticals to impairments supported by substantial evidence in the record and was not bound to

22  accept restrictions proposed the hypothetical questions of plaintiff's counsel.

23       Further, plaintiff fails to explain how SSR 04-1p ("Attestation as an Alternative Signature")

24  relates to Mr. Dettmer's testimony or plaintiff's contentions here.  Plaintiff may have intended to refer

25  to SSR 00-4p which provides that, "[w]hen a VE or [vocational specialist ("VS")] provides evidence

26  about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask

27  about any possible conflict between that VE or VS evidence and information provided in the DOT."

28  Here, the ALJ properly complied with SSR 00-4p because there was no conflict for him to ask about

16

1   between the vocational expert evidence and the information provided by the DOT.  At the hearing, the

2   ALJ received Mr. Dettmer's opinion to identify three jobs in significant numbers that a hypothetical

3   person with plaintiff's limitations could perform.  (AR 237-239.)  Plaintiff points to neither

4   contradictions nor conflicts between the DOT and Mr. Dettmer's testimony.  In short, plaintiff has

5   pointed to no error in the ALJ's handling of hypotheticals or Mr. Dettmer's testimony.

6   ### Development Of Record

7        Plaintiff faults the ALJ for failing to call a medical expert and asserts that neither the ALJ nor

8   Mr. Dettmer understood the visual field defect.

9        "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence

10  or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*,

11  276 F.3d 453, 460 (9th Cir. 2001).  Here, there is no suggestion of an ambiguous or inadequate record

12  relating to plaintiff's visual field defects, and plaintiff cites to no specific instance.  The ALJ requested

13  and received Dr. Lenser's clarification as to plaintiff's ability to handle fine objects and work under

14  bright lights. (AR 199-201, 233-234.)  To address interpretations of Dr. Lenser's opinion, the ALJ asked

15  differing hypothetical questions to Mr. Dettmer. (AR 231-244.)  In his decision, the ALJ addressed Dr.

16  Lenser's clarified opinion and properly relied upon it. (AR 24.)  Plaintiff fails to demonstrate grounds

17  to develop the record further.

18  ### Plaintiff's Credibility

19       Plaintiff challenges the ALJ's evaluation of his subjective statements and argues that the ALJ

20  "failed to give adequate reasons for rejecting [his] credibility."  The Commissioner responds that the

21  ALJ "properly determined and articulated" that plaintiff's allegations of subjective disability "were not

22  credible."

23       "Credibility determinations are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th

24  Cir. 1989); *Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir. 1988).  "An ALJ cannot be required to believe

25  every allegation of disabling pain." *Fair*, 885 F.2d at 603. An ALJ "may disregard unsupported, self-

26  serving statements." *Flaten v. Secretary of Health & Human Services*, 44 F.3d 1453, 1464 (9th Cir.

27  1995).

28       A claimant bears an initial burden to "produce objective medical evidence of underlying

'impairment,' and must show that the impairment, or a combination of impairments, 'could reasonably be expected to produce pain or other symptoms.'" *Baston v. Commissioner of Social Security Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) (quoting *Smolen*, 80 F.3d at 1281)).  If a claimant satisfies such initial burden and "if the ALJ's credibility analysis of the claimant's testimony shows no malingering, then the ALJ may reject the claimant's testimony about severity of symptoms with 'specific findings stating clear and convincing reasons for doing so.'" *Baston*, 359 F.3d at 1196 (quoting *Smolen*, 80 F.3d at 1284).  "If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."  *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

If an ALJ's credibility finding is supported by substantial evidence in the record, a reviewing court may not engage in second-guessing. *Thomas*, 278 F.3d at 959.  A reviewing court will not reverse an ALJ's credibility determinations "based on contradictory or ambiguous evidence." *Johnson*, 60 F.3d at 1434 (citing *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)).  "So long as the adjudicator makes specific findings that are supported by the record, the adjudicator may discredit the claimant's allegations based on inconsistencies in the testimony or on relevant character evidence." *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991).  Moreover, "the ALJ is entitled to draw inferences 'logically flowing from the evidence.'" *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

In *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997), the Ninth Circuit commented:

> In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Smolen*, 80 F.3d at 1284; *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (quoting *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995)); 20 C.F.R. § 404.1529(c).  An ALJ's finding that a claimant generally lacked credibility is permissible basis to reject excess pain testimony.

*See also* SSR 96-7p.[3]

An ALJ may consider the following factors to determine the credibility of a claimant's allegations of disabling pain:

1.    The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

2.    Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

3.    Type, dosage, effectiveness, and adverse side-effects of pain medication;

4.    Treatment, other than medication, for pain relief;

5.    Functional restrictions;

6.    Claimant's daily activities;

7.    Unexplained, or inadequately explained, failure to seek treatment or to follow up a prescribed course of treatment; and

8.    Ordinary techniques to test a claimant's credibility.

*Bunnell*, 947 F.2d at 346; *see* 20 C.F.R. §§ 404.1529, 416.929.

After detailing plaintiff's medical treatment and testimony, the ALJ thoroughly addressed plaintiff's credibility:

> The claimant's statements concerning his impairments and their continued impact on his ability to work are not entirely credible in light of discrepancies between the claimant's assertions and information contained in the documentary reports and reports of the treating and examining practitioners.
>
> For example, the claimant alleged low back pain in his hearing testimony. In analyzing the claimant's testimony in light of the evidence of record, the undersigned finds that his allegations of back pain can not be credited. First, there are no objective findings of record showing any low back impairment which can be reasonably expected to produce the pain alleged. Furthermore, the claimant takes no medication for pain of any type and is under no medical treatment for a back condition. The lack of prescription pain medication and medical treatment belies the presence of severe back pain preclusive of work activity.

---

[3]    SSR 96-7p sets out factors to assess a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) type, dosage, effectiveness, and side effects of any medication claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, claimant receives or has received for relief of pain or other symptoms; (6) measures other than treatment claimant uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.

The claimant has a below the knee amputation of the left leg which he suffered in a motorcycle accident in 1986. Despite the loss of his leg, the claimant worked as a truck driver through May 2002 when he began having trouble with his vision (Exhibit 1E/2). When examined by a consulting physician in September 2002, the claimant reported that his left leg was doing relatively well with the exception of some increased swelling when he walks for long periods of time. The claimant felt that this might be caused by his prosthesis and he planned to have it refitted in the near future (Exhibit 6F/1). The claimant's ability to drive a truck and his statements to the consulting physician clearly contradict his allegations about problems with his leg and difficulties ambulating. The undersigned considers this a major inconsistency bearing on credibility.

Finally, the claimant suffered significant vision loss in his left eye due to glaucoma. While this impairment obviously causes problems for the claimant, even his treating physician stated that the claimant's combined visual problems did not limit his handling of fine objects consistently nor would it totally prohibit him from performing vocational activity (Exhibit 12F/2). The claimant is also able to do housework which is consistent with the demands of light work. (AR 21.)

The ALJ provided specific findings and clear, convincing reasons to discredit plaintiff. To address plaintiff's subjective back pain complaints, the ALJ noted that plaintiff failed to produce objective medical evidence of an underlying impairment that could reasonably be expected to produce pain or other symptoms. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (objective medical evidence "is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.") The ALJ noted plaintiff's inadequately explained failure to seek treatment for his back condition. *See Flaten v. Secretary of Health & Human Servs.*, 44 F.3d 1453, 1464 (ALJ entitled to draw an inference from  general lack of care). Plaintiff takes no medication of any type for his pain and is under no medical treatment. (AR 224.)

The ALJ properly noted inconsistencies with plaintiff's testimony and work record. Plaintiff worked as a truck driver until he began to have trouble with his vision in May 2002 to demonstrate that his left leg below the knee amputation in 1986 had not prevented him to work for 16 years. (AR 109-110.) Plaintiff noted that he stopped working because he "cannot pass [Department of Transportation] physical" due to his vision loss. (AR 109.) Plaintiff reported to Dr. Han that his leg was doing relatively well with swelling after walks for long periods and to which plaintiff attributed to his prosthesis needing a refit. (AR 166.)

Moreover, the ALJ considered testimony from plaintiff's treating physician regarding his functional limitations and plaintiff's daily activities. Dr. Lenser, who had treated plaintiff for glaucoma,

1   determined his vision impairment did not limit plaintiff's ability to perform vocational activities (AR

2   197, 200), and plaintiff testified he is able to "dust, vacuum, mop, [and do] laundry all day long." (AR

3   143.) Further, plaintiff's claims of feeling "dizzy, weak [and] off balance" are inconsistent with his daily

4   activities of lying in a hammock and throwing the ball for his dogs. (AR 142-143.)

5       Substantial evidence supports the ALJ's specific findings on plaintiff's credibility to preclude

6   this Court to second guess the ALJ.  Plaintiff fails to demonstrate error in the ALJ's evaluation of

7   plaintiff's credibility.

8                           **CONCLUSION AND RECOMMENDATIONS**

9       For the reasons discussed above, this Court finds no error in the ALJ's analysis and that the ALJ

10  properly concluded plaintiff is not disabled. This Court further finds that the ALJ's decision is supported

11  by substantial evidence in the record as a whole and based on proper legal standards. Accordingly, this

12  Court RECOMMENDS to:

13      1.   DENY plaintiff's request to reverse the Commissioner's decision to deny plaintiff

14           disability insurance benefits or to remand for further proceedings; and

15      2.   DIRECT this Court's clerk to enter judgment in favor of defendant Jo Anne B. Barnhart,

16           Commissioner of Social Security, and against plaintiff Lawrence Tillotson and to close

17           this action.

18      These findings and recommendations are submitted to the district judge assigned to this action,

19  pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72-304.  No later than June 29, 2006,

20  any party may file written objections to these findings and recommendations with the Court and serve

21  a copy on all parties and the magistrate judge and otherwise in compliance with this Court's Local Rule

22  72-304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and

23  Recommendations."  Responses to objections shall be filed and served no later than July 12, 2006 and

24  otherwise in compliance with this Court's Local Rule 72-304(d).  A copy of the responses shall be

25  served on the magistrate judge.  The district judge will review the magistrate judge's findings and

26  recommendations, pursuant to 28 U.S.C. § 636(b)(1)(c).  The parties are advised that failure to file

27  objections within the specified time may waive the right to appeal the district judge's order. *Martinez*

28  */ / /*

1  *v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

2          IT IS SO ORDERED.

3  **Dated:     June 13, 2006**                    _____/s/ Lawrence J. O'Neill_____
   66h44d                                          UNITED STATES MAGISTRATE JUDGE

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        22